STATE OF WEST VIRGINIA

*In re* **M.M., W.M., T.M., and J.T.**

**No. 20-0187** (Webster County 19-JA-33, 19-JA-34, 19-JA-35, and 19-JA-36)

**FILED**

**September 3, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother E.M., by counsel Jared S. Frame, appeals the Circuit Court of Webster County's January 29, 2020, order terminating her parental rights to M.M., W.M., T.M., and J.T.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Mary Elizabeth Snead, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without granting her an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2019, the DHHR filed an abuse and neglect petition that alleged petitioner failed to properly care for the children because she left them at the home of a friend who was physically unable to provide for the children. According to the petition, the friend told the DHHR that she "needed [the children] out of the home." The DHHR alleged that petitioner was previously adjudicated as an abusing parent during a prior proceeding regarding two of the children because of her substance abuse and her failure to provide them with a fit and suitable home. Petitioner eventually completed an improvement period in that proceeding and the children were returned to her. When the DHHR ultimately located petitioner in the current matter, she refused to submit to a drug screen and admitted that she had no fixed residence. By the time the petition was filed, the DHHR indicated that petitioner's whereabouts were unknown. Finally, the petition alleged that petitioner permitted the children to be around individuals who were explicitly barred from having contact with the children in the prior abuse and neglect proceeding. Because of petitioner's

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

substance abuse issues, her failure to provide the children with a suitable home, and her failure to protect the children from substance abusers and individuals whose own parental rights had been terminated, the DHHR alleged that petitioner abused and neglected the children.[2] The circuit court thereafter held a series of preliminary hearings. Petitioner accepted service of the petition at the county clerk's office, but refused to provide the clerk with a current address.

Petitioner did not appear for the adjudicatory hearing in November of 2019, but was represented by counsel. Based on the evidence presented, the circuit court found that petitioner continued to allow contact between the children and an individual who was prohibited from having contact with them during the prior abuse and neglect proceeding. Not only did this individual present a danger to the children because of the termination of his parental rights to his own child and his substance abuse, the circuit court additionally found that petitioner allowing this individual continued contact with her children was relevant to show her problems with making decisions and the unsuitable home environment she provided. Additionally, an individual who tested positive for methamphetamine on the day the children were removed admitted to Child Protective Services that he used drugs with petitioner, who refused a screen that same day. Based on this evidence, the circuit court adjudicated petitioner of abuse and neglect.

In January of 2020, the circuit court held a dispositional hearing. Again, petitioner failed to appear, but was represented by counsel. According to the circuit court, petitioner had no contact with the children since their removal and had not participated in any proceedings in the matter. Additionally, petitioner failed to participate in any services. As such, the circuit court found that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of petitioner's parental rights was necessary for the welfare of the children. As such, the circuit court terminated petitioner's parental rights.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left

---

[2]The DHHR later filed an amended petition to include allegations against a different adult respondent.

[3]All parents' parental rights have been terminated. According to respondents, the permanency plan for the children is adoption together in a foster home. The guardian indicates, however, that no permanent placement has yet been identified, as the circuit court has been presented with several options for the children's placement.

with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). On appeal, petitioner's lone assignment of error concerns the circuit court's termination of her parental rights. According to petitioner, she was never given the opportunity to attempt an improvement period, therefore termination was inappropriate. We disagree.

Petitioner's argument fails to recognize that the burden to obtain an improvement period rests solely with the moving parent. On appeal, petitioner fails to cite to any portion of the record where she moved for an improvement period, thereby failing to carry her burden for relief on appeal and failing to establish that she satisfied the burden for obtaining an improvement period below. *See* W. Va. R. App. P. 10(c)(7) ("The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal."); W. Va. Code §§ 49-4-610(1)(A), 2(A), and 3(A) (all requiring the filing of a written motion in order to obtain any of the various types of improvement periods). Even more importantly, petitioner could not have established that she was likely to fully comply with an improvement period if granted. *See* W. Va. Code §§ 49-4-610(1)(B), 2(B), and 3(B) (requiring a parent to "demonstrate[], by clear and convincing evidence, that the [parent] is likely to fully participate" in order to obtain an improvement period). Petitioner cites to no evidence that would support a finding that she satisfied this burden below. The only argument she advances in support of her position that she was entitled to an improvement period is that she participated in a single multidisciplinary team meeting by telephone and that she called the circuit clerk's office following the final dispositional hearing to explain that she did not have a ride to the hearing. Contrary to petitioner's assertion that this minimal participation established that she "at least showed some initiative towards the case," the record is clear that petitioner was almost entirely absent from the proceedings and abdicated any responsibility for improving her parenting ability while this matter was pending. As such, it is clear that petitioner could not have satisfied the burden necessary for obtaining an improvement period had she even moved for one.

As for the circuit court's termination of petitioner's parental rights, we similarly find no error. According to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate parental rights upon finding that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected and that termination is necessary for the children's welfare. As set forth in West Virginia Code § 49-4-604(d)(3), a circumstance in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future includes when

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or

neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Here, it is clear that petitioner not only failed to respond to or follow through with the reasonable family case plan, but she essentially made no effort to be involved in the proceedings at all. As such, the conditions of abuse and neglect for which she was adjudicated continued unabated from the time of removal through disposition. Additionally, "[w]e have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). As noted above, petitioner did not visit with the children after their initial removal. As such, the circuit court had ample evidence upon which to find that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future.

Further, the circuit court had ample evidence upon which to find that termination of petitioner's parental rights was necessary for the children's welfare. As the record shows, this was the second proceeding in which petitioner was adjudicated of abuse and neglect. While she was able to regain custody of the two children that were the subject of the earlier proceeding, the fact remains that she then subjected the children to additional abusive and neglectful conduct of the same nature. Petitioner's repeated abuse and neglect of the children, coupled with her total refusal to participate in remedial services in this matter, demonstrate that the children would not be safe if returned to petitioner's care, thereby establishing that termination of her parental rights was necessary.

On appeal, petitioner asserts, without any citation to the record, that the circuit court terminated her rights without requiring that the children be "interviewed as to the implications of termination." This argument not only ignores the fact that the oldest child stated to the DHHR that he was "never going back" to petitioner's care, but also that petitioner's own conduct required termination of her parental rights in order to ensure the children's welfare, as set forth above. As this Court has held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's termination of petitioner's parental rights.

Finally, because a permanent placement for the children has not yet been identified, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires that

4

[a]t least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(c)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 29, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: September 3, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

5